UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-14014-CR-GRAHAM/LYNCH(s)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARLOS ENRIQUE DIAZ-HERNANDEZ,

    Defendant.

_____/



FILED by _____ D.C.

APR 15 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT [D.E. #18]

**THIS CAUSE** having come on to be heard upon the aforementioned motion and this Court having reviewed the motion, the government's response, and having conducted an evidentiary hearing on April 13, 2011, at which time testimony and evidence was received by this Court, this Court makes the following recommendation to the District Court.

    1.    The sole witness called by the government was Border Patrol Agent Mederos. He testified that he has been a Border Patrol Agent for some fourteen years. He has previous experience in dealing with traffic stops and interdiction involving alien smuggling cases. Agent Mederos has previously worked for a period of seven years on the California/Mexico border. He also has previously worked with the Border Patrol in the Canadian/Vermont border.

    2.    On February 24, 2011, Agent Mederos was sitting parked on Interstate 95 (I-95) in Martin County, Florida, at approximately milepost 104 observing southbound traffic for possible evidence of alien smuggling or narcotics smuggling. Agent Mederos testified

that federal law enforcement resources have revealed I-95 to be a main corridor for such criminal activity.

3. Agent Mederos was observing southbound traffic in the daytime with the use of his binoculars. He observed an older model Toyota Corolla vehicle approach his position. He noticed that the vehicle had Texas license plates on the front and later confirmed the Texas license plate on the back of that same vehicle. Based upon his previous work along the United States southern border with Mexico, his experience and intelligence from Border Patrol generally indicates that individuals utilizing vehicles from the State of Texas sometimes smuggle illegal aliens to other parts of the United States.

4. Agent Mederos also noticed that it was a much older vehicle and was not in very good condition based upon his observations. He testified that in his experience and that of Border Patrol in general, alien smugglers or narcotics smugglers sometimes use older vehicles for such criminal activity in the event that the vehicle has to either be abandoned or is seized. If such a seizure takes place, it would not be a significant financial loss to the individuals attempting the criminal activity due to the age and/or condition of the vehicle.

5. Agent Mederos also noticed that the vehicle appeared to be riding very low in the back. He observed only three occupants in the vehicle and that did not appear to be sufficient to cause the vehicle to be riding as low as he observed. He testified that did not make sense to him and that he believed that the vehicle was "overburdened." He therefore decided to follow the vehicle. Agent Mederos pulled out and did follow the vehicle southbound for approximately five to six miles. He was driving a clearly marked Border Patrol vehicle with emergency lights visible on his vehicle. He was dressed in his

uniform as he wore in court which was green and clearly indicated that he was a law enforcement officer. The vehicle had been traveling at approximately 70 miles an hour prior to Agent Mederos pulling out behind it. Once Agent Mederos began to follow the vehicle, the driver slowed to below 50 miles an hour and changed from the "fast lane" to the center lane. Agent Mederos testified that this observation by him led him to believe that the driver was attempting to allow Agent Mederos to pass his vehicle.

6. Agent Mederos pulled alongside the driver's side of the vehicle and drove parallel with it for a period of time. Neither the driver nor any of the passengers looked over at Agent Mederos' vehicle. He testified that the driver and the occupants had a fixed gaze and stared straight ahead while driving slowly in the center lane. He also testified that the vehicle was driving so slowly that they were backing up traffic since Agent Mederos was driving parallel with the vehicle.

7. Agent Mederos then slowed down, pulled behind the vehicle, and pulled up on the right hand side of the vehicle as it continued to travel in the center lane. Once again, Agent Mederos drove parallel with the vehicle. Neither the driver nor any of the occupants looked over nor changed their expression which he categorized as a fixed gaze ahead of them. Agent Mederos also pointed out that as the vehicle first passed his position where he was stationary, it appeared as though the occupants were looking at each other and possibly conversing. This was different than what he observed once he pulled up next to the vehicle on either side. The occupants did not appear to be conversing with each other, turning and speaking with each other, nor turning and looking at the clearly marked law enforcement vehicle which was driving parallel with them.

3

8. Prior to making the traffic stop, Agent Mederos called in the tag number to his dispatcher. The dispatcher advised that the vehicle was registered to an individual named Victor Lopez in Houston, Texas. Agent Mederos testified that based upon his experience and the collective experience of the Border Patrol in general, that Houston, Texas, is a hub of alien smuggling wherein individuals are brought into the country through the southern border with Mexico and brought to the Houston area. From that "hub", the individuals who illegally enter the United States are driven and disbursed to other areas of the United States. This was another factor which he took into consideration.

9. Agent Mederos turned on his emergency lights to get the driver to pull over, but the driver did not do so. Agent Mederos then had to slow down, pull over to the driver's side of the vehicle, and turn on his siren before the driver pulled over.

10. Agent Mederos walked up to the vehicle and, in English, asked the driver and passengers for proof of nationality. The Defendant presented a Florida identification card which appeared to Agent Mederos to be fraudulent. The other occupants of the vehicle provided identification documents from Guatemala. All three occupants, including the Defendant, admitted that they were illegally in the United States. This Court should also point out that during the hearing, Agent Mederos did identify the Defendant in court as the person who was arrested in that vehicle that same date. All three occupants of the vehicle were arrested and transported. It is noted that the Defendant was not the driver but was one of the passengers. The driver and other occupant were turned over to immigration for deportation proceedings.

11. On cross-examination, Agent Mederos admitted that Texas is a very large state and that Houston is a very large metropolitan area within Texas where many Hispanic

citizens reside. However, his attention to the vehicle was not solely based upon the Texas tags according to Agent Mederos. The Texas tags combined with what he believed was an "overburdened" vehicle riding very low, caused him to follow the vehicle. His later observations of the fixed stare and erratic driving/slow speed of the vehicle were all taken into consideration as to whether or not he should make an immigration stop.

12.     It was determined that there were approximately four very heavy suitcases in the trunk of the vehicle. When they were removed, it was clear that this was what was overburdening the vehicle and causing it to ride low.

13.     No traffic citations were written since the United States Border Patrol does not enforce local traffic laws. Agent Mederos did reiterate that normally when he encounters drivers on the Interstate in his marked unit, people will look over at him and sometimes even pass his vehicle when he is driving at the posted speed limit. This is why he felt it unusual for the individuals to not even look over at his vehicle when he drove parallel with them on both the driver's side and the passenger's side during the five to six mile period involved in this case.

14.     The Defendant presented no witnesses or evidence at the Suppression Hearing.

## ANALYSIS

15.     The Defendant as a passenger in the vehicle has standing to challenge the traffic stop. Brendlin v. California, 127 S.Ct. 2400 (2007).

16.     The court next looks to the factors considered by Agent Mederos in this case and whether or not those factors establish sufficient reasonable suspicion to justify a traffic stop. There is no limit to the factors which may be considered and they are viewed on a

case-by-case basis. Examples of such factors which have been found sufficient to establish reasonable suspicion to justify a traffic stop in a case such as this are the driver slowing down and/or driving erratically; the driver and/or passengers maintaining a "stiffening" posture; and the driver and/or passengers failing to acknowledge a law enforcement vehicle in clear sight in the immediate vicinity of where the subject vehicle is traveling. Further, the analysis by the Court includes any specialized training and experience of the officer making the traffic stop. During such analysis by the Court, the factors are not to be separated out. The factors taken individually may not be remarkable. However, taken together, along with the officer's experience and location where the officer makes the observations, the factors may be quite unusual. See United States v. Arvizu, 534 U.S. 266 (2002).

17. The factors considered to constitute reasonable suspicion to justify a traffic stop in a situation such as this are to be viewed together in their totality. Reasonable suspicion may be demonstrated by a combination of factors such as characteristics of the area, proximity of the area to an international border, the usual traffic patterns on the roadway, previous experience of the officer involving alien smuggling in the particular area, behavior of the driver such as erratic driving, and characteristics of the vehicle including the appearance of the vehicle being heavily loaded. United States v. Cruz-Hernandez, 62 F.3d 1353 (11th Cir. 1995).

18. In Cruz-Hernandez, the Eleventh Circuit upheld a traffic stop in such a situation where the factors considered by the arresting officer were as follows:

    A) the driver of the vehicle was dressed in clothes typical of undocumented aliens working in local fields;

B) the driver quickly averted his gaze and jerked his head to the front appearing nervous;

C) the driver appeared to be of Hispanic nationality;

D) the defendant was driving a van typical of those that transport large numbers of undocumented aliens;

E) the vehicle had out-of-state license plates;

F) knowledge of the officer that undocumented aliens lived or traveled in the area; and

G) there were complaints by local citizens that undocumented aliens lived in the area.

19. The Cruz-Hernandez case stands for the legal precedent that the totality of the circumstances are what is to be considered by the reviewing court when a challenge to the traffic stop is made. All of the factors need not be present. There is no formulated list of permissible factors. This Court must make a determination as to whether or not the factors observed by Agent Mederos as related during his testimony at this hearing constituted sufficient reasonable suspicion to justify the traffic stop. The Court should not engage in a "divide and conquer" analysis by viewing in isolation each factor and rejecting them if an innocent explanation is available. Instead, each of the factors cited by Agent Mederos to support his stop must be viewed together in their totality. United States v. Bautista-Silva, 567 F.3d 1266 (11th Cir. 2009).

20. In Bautista-Silva the arresting agent observed a Suburban automobile with a California license plate while the agent was monitoring southbound traffic on I-95 in Brevard County, Florida. The Border Patrol agent had within his collective experience

information that persons involved in alien smuggling travel I-95 through that area to South Florida. The arresting agent observed the Suburban with the California license plate was occupied by a driver and a passenger who appeared to be of Hispanic nationality. There were four other passengers in the back of the vehicle. As the agent followed the vehicle and attempted to catch up to it, the vehicle accelerated to a speed well above the posted speed limit. The agent was able to pull up alongside the vehicle and look into it. The agent in Bautista-Silva testified that the passengers appeared nervous and did not acknowledge the agent driving parallel to them. The occupants simply continued to look straight ahead. Based upon these observations, the agent stopped the vehicle and found that all five of the passengers were illegal aliens from Mexico. The Eleventh Circuit Court of Appeals found that the agent's decision to stop the vehicle was based on specific articulable facts together with rational inferences from those facts which reasonably warranted the agent's suspicion that the vehicle contained illegal aliens.

21. This Court in United States v. Cruz-Rivas, 2009 WL 367739 (S.D. Fla. 2009) recommended granting of a motion to suppress involving an immigration traffic stop. Judge Graham adopted that Report and Recommendation. However, the factors proffered by the government to justify the traffic stop in Cruz-Rivas were very limited as compared to the factors considered by Agent Mederos in this case. In Cruz-Rivas, the only factors before the Court were that the minivan had a California license plate driven by a person who appeared to be of Hispanic nationality and the vehicle was traveling on I-95. There were no observations of suspicious activity, erratic driving, unusual fixed gazes/posturing by the occupants or any unusual appearance fo the vehicle such as it riding low. Based on those very limited factors presented in Cruz-Rivas, this Court recommended that the

motion to suppress be granted. By comparison to this case, Agent Mederos had many more factors which he considered prior to making the decision to stop the vehicle in which the Defendant in this case was a passenger.

22. In considering the totality of the factors considered by Agent Mederos in this case, this Court finds that Agent Mederos had reasonable suspicion to make an immigration traffic stop. First, Agent Mederos testified that he has had over 14 years experience with the Border Patrol both on the southwest border of California/Mexico and the northeast border of Vermont/Canada. This combined with his local experience in this area and the collective intelligence information provided through his agency, Agent Mederos has a wealth of knowledge to draw upon in determining whether factors observed by him were indicators of possible alien smuggling.

23. Agent Mederos testified that the vehicle in which the Defendant was a passenger drew his attention because it was from Texas and was a much older vehicle in poor shape. He testified that based upon numerous other investigations, the U. S. Border Patrol has learned that vehicles from Texas are sometimes used to smuggle aliens into the South Florida area. Further, that many time smugglers use older vehicles so that if they are seized or forfeited, the smuggler does not sustain a significant financial loss.

24. Agent Mederos testified that his initial observations of the vehicle raised his suspicions because it appeared to be "overburdened" for a Toyota model of its type. The vehicle appeared to be riding very low in the back which could mean that there were people hidden in the trunk or that there was possible contraband being smuggled in the trunk. This was another factor that Agent Mederos took into consideration based upon his observations on the scene.

25.     After viewing the vehicle as described above, Agent Mederos pulled out and followed the vehicle in his clearly marked patrol unit. The driver of the vehicle slowed precipitously and moved to the center lane.  Agent Mederos testified that he and the subject vehicle were traveling so slowly that traffic was backing up behind them both. Agent Mederos believed that this was an attempt for the vehicle to allow Agent Mederos to pass it.  Agent Mederos did not do so and instead pulled along the driver's side of the vehicle. He testified that when he originally observed the vehicle pass his stationary location along I-95, the driver and occupants appeared to be turning their heads and conversing with each other.  The Court mentions this fact here because Agent Mederos testified that when he pulled alongside the vehicle no one turned to look at him.  He categorized the driver and passengers as having a fixed gaze, acting nervous, and staring straight ahead.  Agent Mederos then pulled around to the passenger's side of the vehicle and once again no one looked over or acknowledged him driving parallel with them. The driver and passengers continued to appear nervous and had a fixed gazes straight ahead.

26.     Agent Mederos attempted to stop the vehicle with his emergency lights, but the driver did not stop.  He had to pull along the driver's side again and hit his siren twice. Only then did the driver pull over to the side of the road.  Agent Mederos asked the individuals in the vehicle, in English, for any forms of identification.  None of the occupants appeared to understand him. Therefore, Agent Mederos repeated the request in Spanish. The Defendant produced a Florida identification card which Agent Mederos believed to be fraudulent. The other individuals presented documents from Guatemala. It was apparent that all of the individuals were illegally in the United States.  Agent Mederos testified that

10

the Defendant and the other individuals immediately admitted that they were in the United States illegally.

28. 27. This Court must look at the factors which Agent Mederos took into consideration before he made the stop. Those factors were:

    (1) Vehicle traveling on I-95 which is a known corridor utilized for alien smugglers;

    (2) Vehicle with out-of-state tags from a southwest border state, i.e., Texas;

    (3) Vehicle appearing to be "overburdened" and riding very low in the rear for the type of vehicle;

    (4) An older type vehicle in poor condition which is often used by alien smugglers;

    (5) Erratic driving such as slowing down significantly and changing lanes to the degree that Agent Mederos and the subject vehicle were backing up traffic on I-95; and

    (6) Fixed gazes, nervousness, and staring straight ahead by the driver and passengers of the vehicle when observed from either side while Agent Mederos drove parallel to them in his marked patrol unit.

28. This Court finds that these factors taken collectively and combined with Agent Mederos' law enforcement experience do constitute a reasonable suspicion to justify an immigration stop.

29. The government points out that the identity of the Defendant, whether it be fingerprints taken upon his arrest, the immigration file maintained in his case, or other items of identification obtained as a result of the traffic stop are not suppressible regardless of whether or not the stop is found to be improper. The government makes a good point and the case law supports that argument. Therefore, even if the District Court

disagrees with this Court's finding that the traffic stop was constitutionally permissible, the applicable case law does not justify suppression of the Defendant's identification and any other identity-related evidence. This Court would also point out at this time that there are no specific items of personal property seized from the vehicle which the government intends to introduce into evidence. Counsel for the government stated that none of the luggage or other contents of the vehicle were going to be introduced into evidence. Therefore, this cases rises or falls upon the constitutionality of the traffic stop which does constitute a seizure of the Defendant.

30. The Eleventh Circuit Court of Appeals has addressed this very issue on several occasions. The Court has found that even where there has been a suppression based upon a finding of an improper traffic stop/seizure, the identity-related evidence obtained as a result of an unconstitutional stop is not suppressible in the criminal prosecution when that identity-related evidence is offered only to prove who the defendant is. The court went on to state that societal costs of suppression of such evidence outweighs the minimum deterrent effect that suppression of such evidence would have given the government's ability to collect new and admissible evidence of the defendant and re-indict the individual after he has been found and arrested. United States v. Farias-Gonzalez, 556 F.3d 1181 (11th Cir. 2009).

31. In Farias-Gonzalez, the immigration officers were patrolling apartment complexes in the Atlanta area. Without any probable cause, they asked an individual for his identification and entered his apartment when the individual went to get his identification. The agents concluded that the man may be illegally in the country and took his fingerprints. The defendant was found to be illegally in the United States and was

charged with illegal re-entry after deportation just as the Defendant is in this case. The defendant in Farias-Gonzalez filed a motion to suppress. It was ultimately decided by the trial court that the agents engaged in an unconstitutional search and seizure. The court ordered all evidence obtained as a result of the unconstitutional search and seizure to be suppressed except for the fingerprint evidence, photographs of the defendant, and his alien immigration file. The Eleventh Circuit Court of Appeals upheld that trial court ruling and held that the exclusionary rule does not apply to evidence to establish the defendant's identity in a criminal prosecution. Accordingly the fingerprint and photographic evidence in the Farias-Gonzalez case offered to prove the defendant's identity was not suppressible even in light of the unconstitutional search and seizure. The Eleventh Circuit Court of Appeals has re-stated this same legal precept in United States v. Vasquez-Garcia, 344 Fed. Appx. 591 (11th Cir. 2009) and United States v. Aguila-Perez, 344 Fed. Appx. 521 (11th Cir. 2009).

32.   In summary, this Court finds that Agent Mederos had sufficient factors within his observation and experience to constitute a reasonable suspicion justifying an immigration stop of the subject vehicle in which the Defendant was traveling. Therefore, this Court will recommend that the Motion To Suppress be denied on those grounds. Alternatively, even if the District Court finds that the totality of the factors within Agent Mederos' framework of knowledge were insufficient to justify the traffic stop and seizure of the Defendant, the identity-related evidence obtained after the Defendant was taken into custody is not suppressible under the applicable case law as recited by this Court above.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant's Motion To Suppress Evidence Obtained In Violation Of The Fourth Amendment [D.E. #18] be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald L. Graham, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** this 15TH day of April, 2011, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. Donald L. Graham
AUSA Theodore M. Cooperstein
AFPD Fletcher Peacock